552 So.2d 807 (1989)
STATE of Louisiana
v.
Gregory Paul JOHNSON.
No. KA 88 1832.
Court of Appeal of Louisiana, First Circuit.
November 15, 1989.
*808 James R. McClelland & Walter J. Senette, Asst. Dist. Attys., Franklin, for state.
Gregory P. Johnson, in pro per.
Before EDWARDS, LANIER and FOIL, JJ.
EDWARDS, Judge.
Gregory Paul Johnson was charged by bill of information with aggravated burglary, a violation of LSA-R.S. 14:60.[1] He was tried by jury and convicted of the responsive offense of simple burglary. The state filed a petition pursuant to LSA-R.S. 15:529.1, charging that defendant was a fourth felony offender. After a hearing on the state's petition, the court found that defendant was a second felony offender and sentenced him to serve twenty years at hard labor. Defendant appealed pro se, arguing as his only assignment of error that the trial court imposed an excessive sentence.[2]

FACTS
Defendant was charged with the aggravated burglary of the residence of Mr. and Mrs. Edmond Durocher in Franklin, Louisiana. Mrs. Durocher testified that she returned to the house on a chilly day in March, 1987, and found the front and back doors to her home open. She entered the house and saw a black male step out of a bedroom. After she shouted at the man, he picked up two guns that he had placed on the couch and fled through the back door.
Mr. Durocher testified that he arrived at the house a few minutes after his wife. He saw a black male walking along the side of his home. After noting that the man carried one of his rifles, Mr. Durocher shouted and gave chase. He pursued the man for approximately two hundred yards, *809 but eventually returned to his house to continue the search from his car.
Several members of the Franklin Fire Department were working on a fire truck parked on the street near the victims' house and also gave chase. Doug Charpentier testified that he ran after the man until he saw the suspect drop the two guns and other property. He stayed with the weapons until the arrival of the Franklin police. Benjamin Robicheaux testified that he and Doug Charpentier ran after the man and that he continued the chase across a local football field after Mr. Charpentier dropped back to stay with the weapons. He testified that he never lost sight of the man as they ran; and, further, he saw his grandfather, Roy Millet, capture the man in the yard of a house nearby. Mr. Millet testified that he chased the man on foot after he heard Mr. Durocher yell for help. He caught a ride on a passing truck, from which he could see the man's direction of travel, and got off the truck when he drew close enough to apprehend the suspect. As the perpetrator attempted to climb a fence, Millet confronted him.
Benjamin Robicheaux and Roy Millet identified defendant as the man they pursued at Mr. Durocher's request. Mr. Durocher identified defendant as the same man who was brought to his house for an identification by the Franklin police after defendant was captured near the football field shortly after the incident at his home. Mr. Durocher identified the weapons and a box of dominoes recovered by Doug Charpentier as his property. He also identified a small bag of jewelry recovered from defendant as items belonging to his wife and himself.

EXCESSIVE SENTENCE
The sentencing range statutorily authorized for defendant's adjudication as a second felony offender was not less than four nor more than twenty-four years. LSA-R.S. 14:62; LSA-R.S. 15:529.1(A)(1). The sentence of twenty years was, therefore, within statutory limits. Defendant contends, however, that the sentence is excessive because the trial court improperly considered several out-of-state convictions in determining the appropriate sentence; and, further, that the sentence is unauthorized because the state failed to prove that the five-year cleansing period had not lapsed.
In the petition charging that defendant was a fourth felony offender, the state listed five predicate felonies: a conviction of theft in the State of Texas, pursuant to bill no. 40,771-R, for which a sentence of seven years at hard labor was imposed on April 12, 1982; a conviction of theft in the State of Texas, pursuant to bill no. 49,773-R, for which a sentence of seven years at hard labor was imposed on April 12, 1982; a conviction of burglary of a building in the State of Texas, pursuant to bill no. 36,793, for which a sentence of two years at hard labor was imposed on May 23, 1979; and two convictions of forgery in the State of Louisiana, pursuant to bill no. 92,389, for which two sentences of three years each at hard labor were imposed in the State of Louisiana on April 6, 1977. During the habitual offender hearing, the court found that the out-of-state convictions, all of which were derived from guilty pleas, were defective and could not be used as predicate felonies for the habitual offender adjudication. The court found, however, that defendant's forgery convictions in this state did provide a basis to adjudicate defendant as a second felony offender.
According to records introduced at the habitual offender proceeding, defendant received two concurrent sentences of three years at hard labor for the Louisiana forgery convictions of April 6, 1977. However, the court suspended execution of the sentences and placed defendant on probation for two years. The probationary term was unsuccessfully terminated on April 6, 1979. The instant offense occurred March 13, 1987.
LSA-R.S. 15:529.1(C) provides that the habitual offender law is not applicable in cases where more than five years have elapsed since the expiration of the maximum sentence of the previous felony for which the accused has been convicted. The date of actual discharge from the state's custody, whether extended through revocation *810 of parole or shortened by law due to "good time" diminution of the initial sentence, is the controlling date for determining the expiration of the predicate felony. State v. Anderson, 349 So.2d 311, 314 (La. 1977). Any time served by the accused in a penal institution, whether inside or outside the state, is excluded from the five-year cleansing period. LSA-R.S. 15:529.1(C).
LSA-R.S. 15:529.1(F) sets forth which evidence is deemed to be prima facie evidence of incarceration sufficient to support a defendant's adjudication as a multiple offender. That provision provides that records introduced by the state which include a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary shall be deemed prima facie proof of imprisonment and discharge for purposes of the statute. While LSA-R.S. 15:529.1 permits the establishment of prima facie proof of a prior felony conviction by compliance with subsection F, necessary facts which permit enhanced punishment may also be proved by other competent evidence. State v. Lee, 364 So.2d 1024, 1031 (La.1978).[3]
From the records of defendant's forgery convictions admitted herein, it is apparent that the probationary period of two years was revoked because defendant was arrested in Texas for the first of the crimes to which he pled guilty. Although the records of the forgery convictions reveal that the probation was unsuccessfully terminated, there is no indication that defendant actually was committed to the penitentiary upon revocation of his probation. Nevertheless, the trial court apparently found that the date of discharge from those convictions was not essential for determining the beginning of the five-year cleansing period, because defendant spent much of the next several years in the custody of the Texas penal system; and, even if the Texas convictions could not be used for enhancement purposes, the time defendant spent incarcerated could be excluded from the cleansing period.
In State v. Santiago, 416 So.2d 524 (La.1982), the Louisiana Supreme Court reversed the defendant's adjudication as a third felony offender because the evidence of one of the predicate felonies was insufficient to support sentence enhancement. The court then remanded the case to the district court for the defendant to be resentenced as a second felony offender. However, after the intermediate felony was excluded from use in the habitual offender proceedings, more than five years had elapsed between the defendant's discharge from the remaining predicate felony and the conviction the state sought to enhance. Thereafter, on rehearing the Supreme Court vacated its original decree, as follows:
Because the defendant's 1974 conviction and sentence cannot be considered in this enhancement proceeding, more than five years has elapsed since the expiration of his six months sentence following his first conviction in 1968. Consequently, the multiple offender statute is inapplicable and the defendant must be sentenced as a first offender. (emphasis added)
416 So.2d at 527. Thus, we find that the trial court erred in finding that the time defendant spent incarcerated in Texas could be used to suspend the expiration of the five-year cleansing period provided for in LSA-R.S. 15:529.1(F). Therefore, the cleansing period began to run with defendant's discharge from the Louisiana forgery *811 convictions for which defendant was sentenced in 1977.
During the habitual offender proceedings, the state introduced records relating to defendant's forgery conviction. Among those documents was a certified true copy of a letter from William E. Dunn, Probation and Parole Chief, Department of Corrections, Division of Probation and Parole, to defendant, dated April 23, 1979, which reads, in pertinent part, as follows:
According to our records and information received from your probation and parole officer, your period of probation expired by means of unsatisfactorily terminated effective 4/6/79.

This means that you are discharged from further supervision and that your sentence has been satisfied and completed.
Under the provisions of Louisiana Constitution, Article 1, Section 20, full rights of citizenship are hereby restored ... (emphasis added)
Accordingly, the five-year cleansing period began to run on April 23, 1979. More than five years had elapsed between defendant's discharge from the forgery convictions and the burglary conviction which the state sought to enhance herein.
We find, therefore, that defendant's adjudication as a second felony offender is invalid, and the sentence imposed thereunder must be vacated. We do not consider the merits of defendant's claim that the sentence is excessive. This matter is remanded to the trial court for resentencing in accordance with the opinions expressed herein.
CONVICTION AFFIRMED, SENTENCE VACATED, REMANDED FOR RESENTENCING.
NOTES
[1] On March 26, 1987, the state filed two separate bills of information charging defendant with the burglary of the victim's home. In one of the bills, defendant was charged with simple burglary; in the other bill, he was charged with aggravated burglary. The state proceeded to trial on the charge of aggravated burglary.
[2] Defendant filed a second designation of error in which he simply asked the Court to review the record for patent error. This Court routinely reviews each criminal appellate record for the existence of error patent on the face of the record. No such error was found. In a supplemental brief, defendant set forth two additional claims. However, these claims were not briefed pursuant to a formal assignment of error. In accordance with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of LSA-C.Cr.P. arts. 844 and 920, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. See State v. Spears, 350 So.2d 603, 605 (La.1977); State v. Overton, 337 So.2d 1201, 1207 (La.1976).
[3] Notwithstanding the provisions of LSA-R.S. 15:529.1(F), the jurisprudence is unclear whether the defendant or the state has the burden of proving whether the five-year cleansing period has elapsed. In State v. Turner, 365 So.2d 1352, 1355 (La.1978) the Louisiana Supreme Court noted, in response to the defendant's complaint that the date of discharge had not been proven, that the record indicated that more probably than not the five-year cleansing period had not elapsed between the crimes; however, if the defendant was able to show that the five years had elapsed, he could secure appropriate relief through post-conviction proceedings. (emphasis added) Since that decision, at least two of the lower state appellate courts have assumed without deciding that the state must prove that the five year cleansing period had not elapsed. (emphasis added) See State v. Bennett, 524 So.2d 1297 (La.App. 3rd Cir.1988); State v. Wright, 509 So.2d 784 (La.App. 5th Cir.1987).