# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #014

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **21st day of March, 2025** are as follows:

**BY Weimer, C.J.:**

2024-KK-00888     STATE OF LOUISIANA   VS.   CHRISTOPHER RAYMOND DIANO
(Parish of Terrebonne)

THE RULING OF THE DISTRICT COURT IS AFFIRMED. SEE OPINION.

Justice Jeanette Theriot Knoll, retired, heard this case as Justice Pro Tempore, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice ad hoc for Justice Cade R. Cole.

Judge Frank H. Thaxton, III, retired, sitting ad hoc for Justice John Michael Guidry, recused.

Crain, J., dissents and assigns reasons.

McCallum, J., dissents.

# SUPREME COURT OF LOUISIANA

## No. 2024-KK-00888

## STATE OF LOUISIANA

## VS.

## CHRISTOPHER RAYMOND DIANO

*On Supervisory Writ to the 32nd Judicial District Court,*
*Parish of Terrebonne*

**WEIMER, Chief Justice**[1]

This case addresses the proper statutory interpretation of Louisiana's Habitual Offender Law; specifically, calculation of the five-year cleansing period pursuant to La. R.S. 15:529.1(C)(1). Finding the period of time defendant was incarcerated for a *misdemeanor* offense is included in the calculation of the five-year cleansing period,[2] the ruling of the district court granting defendant's motion to quash the habitual offender bill is affirmed.

## FACTS AND PROCEDURAL HISTORY

On March 3, 2023, Christopher Diano was convicted of a felony offense (inciting a felony) committed on January 24, 2021. Following his conviction, the State filed a bill of information seeking to adjudicate Diano as a habitual offender

---

[1] Justice Jeanette Theriot Knoll, retired, heard this case as Justice Pro Tempore, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice ad hoc for Justice Cade R. Cole. Judge Frank H. Thaxton, III, retired, sitting ad hoc for Justice John Michael Guidry, recused.

[2] Stated another way, the days defendant spent incarcerated for a misdemeanor offense are counted, as opposed to not being counted, when evaluating whether the cleansing period of five years has elapsed.

based on three predicate felony convictions dated April 7, 2009 (two counts of possession of a controlled dangerous substance), May 6, 2010 (possession of a controlled dangerous substance and attempted possession of a firearm by a convicted felon), and January 7, 2013 (possession of a controlled dangerous substance). Diano completed his parole on the three predicate offenses on December 25, 2015. Between December 25, 2015, and January 24, 2021, when the current offense was committed, Diano was incarcerated for approximately 180 days for a misdemeanor conviction.

Diano filed a motion to quash the habitual offender bill of information, asserting the predicate offenses were cleansed pursuant to La. R.S. 15:529.1 because more than five years had elapsed between his last felony conviction in 2013 and his commission of the current felony in 2021. The State objected, arguing the five-year cleansing period had not elapsed because the statute also provides that "any period of ... incarceration" is not included in the computation of the five-year cleansing period. Thus, although five years had elapsed from December 25, 2015, the date defendant completed his parole on the three predicate offenses, and January 24, 2021, the date of the current offense, the State took the position that the 180 days in which Diano was incarcerated for a misdemeanor offense in 2018 and 2019 should be excluded from calculation of the cleansing period. In response, defendant argued the purpose of the habitual offender law is to punish multiple *felonies*, and time spent incarcerated for a *misdemeanor* offense did not affect calculation of the five-year cleansing period.

The district court granted Diano's motion to quash, finding La. R.S. 15:529.1(C)(1) is properly interpreted to mean that the cleansing period is suspended by incarceration or correctional supervision attributable only to the predicate felony offenses listed in the habitual offender bill. The court found the State's suggested

2

interpretation of the statutory language, i.e., incarceration for *any* reason suspends the cleansing period, could lead to absurd results. The court of appeal denied the State's writ application. **State v. Diano**, 24-0206 (La. App. 1 Cir. 6/17/24) (unpublished).[3]

Upon the State's application, certiorari was granted to review the correctness of the district court's ruling. **State v. Diano**, 24-00888 (La. 11/14/24), 395 So.3d 1164.

## DISCUSSION

The Habitual Offender Law is set forth in La. R.S. 15:529.1. Section (A) of the statute addresses and provides enhanced sentences for habitual offenders–i.e, persons who commit a felony after having been previously convicted of a felony offense. Section (C) of the statute provides for a five-year "cleansing period"[4] after which the enhancement provisions of the Habitual Offender Law cannot be used to increase the punishment for the current offense. Relative to the dispute before the court is Subsection (C)(1), which provides:

> [T]he current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than five years have elapsed between the date of the commission of the current offense or offenses and the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for the previous conviction or convictions, or between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or

---

[3] Judge Welch dissented. Based on the language of La. R.S. 15:529.1(C)(1), he found that while not a predicate offense, the defendant's 180 days served in a penal institution in 2018 and 2019 for the misdemeanor conviction should have been excluded from the calculation of the five-year cleansing period. Judge McClendon concurred in the writ denial on this issue, and would have denied on the showing made on the State's alternative argument (discussed *infra*).

[4] The statute does not use the term "cleansing period." This court previously discouraged use of that term, noting it is a misnomer and "misguided attempt to describe the intricacies of subsection (C) in a short hand manner." **State v. Everett**, 00-2998, p. 7 (La. 5/14/02), 816 So.2d 1272, 1276. However, because use of the term has persisted, and its meaning in this context appears to be well understood, we will use "cleansing period" as it is employed by the parties in this case.

offenses. In computing the intervals of time as provided in this Paragraph, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of the five-year periods between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, and the next succeeding offense or offenses.

The issue this court must resolve is one of statutory interpretation, specifically whether the statutory language–"any period ... of incarceration by a person in a penal institution ... shall not be included in the computation" of the five-year period–requires the 180 days Diano was incarcerated for a misdemeanor offense be excluded when calculating whether the five-year cleansing period has elapsed. Because the issue presented is a question of law, review of this matter is *de novo* without deference to the legal conclusions of the courts below. This court is the ultimate arbiter of the meaning of the laws of this state. **Durio v. Horace Mann Ins. Co.**, 11-0084, p. 14 (La. 10/25/11), 74 So.3d 1159, 1168; **Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev**., 10-0193, p. 9 (La. 1/19/11), 56 So.3d 181, 187.

This court begins its analysis with the proposition that the starting point in the interpretation of any statute is the language of the statute itself. **State v. Shaw**, 06-2467, p. 14 (La. 11/27/07), 969 So.2d 1233, 1242. Criminal statutes must be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. La. R.S. 14:3; **State v. Skipper**, 04-2137, p.3 (La. 6/29/05), 906 So.2d 399, 403. When the statutory language is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. *Id.*; see also La. C.C. arts. 10

4

& 12.[5] A criminal statute, like all other statutes, must be interpreted to preserve and effectuate the manifest intent of the legislature, avoiding an interpretation which would operate to defeat the object and purpose of the statute. **Shaw**, 06-2467 at 15, 969 So.2d at 1242.

Applying these principles, this court is not convinced by the State's argument that the 180 days defendant was incarcerated for a misdemeanor offense are not counted in the calculation of the five-year cleansing period. To support its position, the State focuses solely on language extracted from the second sentence of La. R.S. 15:529.1(C)(1): "any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation" of the five-year period. However, rules of statutory interpretation prevent this court from reading that language in isolation from the remainder of the statute. The full text of La. R.S. 15:529.1(C)(1) begins by listing bases for calculating the cleansing period:

> [I]f more than five years have elapsed between the date of the commission of the current offense or offenses and the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for the previous conviction or convictions, or between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses.

Pursuant to this statutory language, the cleansing period is calculated in five-year intervals of time linked solely to previous convictions alleged in the habitual offender bill–*felony* offenses. See **State v. Avist**, 09-101, pp. 5-6 (La. App. 5 Cir. 7/28/09), 19 So.3d 1203, 1206. The statute requires that each step of the multiple offender

_____

[5] Basic Civil Code concepts regarding interpretation of statutes are applicable to interpreting the Criminal Code. **State v. Griffin**, 14-1214, pp. 4-5 (La. 10/14/15), 180 So.3d 1262, 1267, n. 2.

ladder be examined to determine whether the State can link the first felony conviction to the second, the second felony conviction to the third, and the third felony conviction to the fourth, to charge the defendant as a fourth felony offender. **State v. Thomas**, 05-2210, p. 10 (La. App. 1 Cir. 6/9/06), 938 So.2d 168, 176. The second sentence of La. R.S. 15:529.1(C)(1) goes on to provide:

> In computing the intervals of time as provided in this Paragraph, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of the five-year periods between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, and the next succeeding offense or offenses.

The State takes the position that this sentence unambiguously provides that *any* period of time a defendant spends incarcerated is not included when computing whether five years have elapsed. But the State fails to recognize the import of the prefatory language: "In computing the intervals of time *as provided in this Paragraph* ...." [Emphasis added.] "This Paragraph"–(C)(1)–addresses calculation of the cleansing period for purposes of determining whether enhanced habitual offender penalties can be imposed on a defendant who has committed multiple felonies. Thus "this Paragraph" solely concerns *felony* offenses. Reading the second sentence in conjunction with the text of the statute as a whole, the language is most logically understood to mean that any period of parole, probation, or incarceration relative to a *felony* offense shall not be included in calculating the five-year period.[6]

Adopting the State's interpretation and not counting the days Diano was incarcerated for a *misdemeanor* offense when calculating whether five years have elapsed would be inconsistent with the overall purpose of the Habitual Offender Law.

---

[6] Although this court's ultimate decision affirms the district court's ruling, it departs from the district court's analysis which limited the statutory language as applicable only to the *predicate* felony offenses.

The Habitual Offender Law "punishes an offender's persistent and *felonious* defiance of the state's criminal laws." **State v. King**, 06-1903, p. 7 (La. 10/16/07), 969 So.2d 1228, 1232 (emphasis added). The purpose of the Habitual Offender Law is to discourage commission of successive *felonies* and to enhance punishment for subsequent felonies. **Shaw**, 06-2467 at 17, 969 So.2d at 1243. A statutory provision providing for a cleansing period was first added to the Habitual Offender Law in 1942. See 1942 La. Acts 45. This court has recognized the purpose of adding a cleansing period was to give an offender a better chance for rehabilitation by providing that he would not be treated as a habitual offender if he could avoid further felony convictions for a period of five years. **State v. Anderson**, 349 So.2d 311, 315 (La. 1977) (internal citation omitted). In this case, Diano avoided felony convictions for a period of five years. Imposing an enhanced habitual offender penalty on defendant as a result of a relatively short period of incarceration for a misdemeanor offense fails to advance this purpose. Rather, interpreting "any period ... of incarceration" solely relative to felony offenses properly focuses on felonious activity, and preserves the intent of the legislature in enacting the Habitual Offender Law.[7]

Additionally, criminal and penal laws, such as the Habitual Offender Law, must be strictly construed. **State ex rel. Mims v. Butler**, 601 So.2d 649, 655 (La. 1992). "In the absence of an express legislative intent, any doubt or ambiguity should be resolved in favor of lenity and not so as to multiply the penalty imposed." *Id*. Adopting the State's interpretation of the statute would contradict the rule of lenity and result in severe ramifications for defendant, who faces a maximum penalty of two

---

[7] In fact, the statute uses the words "felony" or "felonies" thirty eight times, whereas the word "misdemeanor" does not appear in the statute.

years for the January 24, 2021 felony offense.[8]  However, if defendant is adjudicated as a fourth felony offender, he faces a minimum sentence of twenty years.[9]  The analysis of La. R.S. 15:529.1(C)(1) properly encompasses a reading of the entire statute, as opposed to a single clause, in addition to applying a strict construction of the statutory language, resolving any ambiguity in the language in favor of lenity.

Moreover, as recognized by the district court, the State's suggested interpretation would lead to absurd results.  See La. C.C. art. 9, which provides that courts should avoid an interpretation that creates such a result.  The State's position that *any* period of incarceration must be excluded from calculation of the cleansing period would encompass incarcerations for such things as traffic violations/fines, failure to pay child support, and contempt.  Even more absurd, the State's interpretation would encompass incarcerations for arrests that do not result in a conviction, such as where charges are dropped or a defendant is found not guilty. Although these potential scenarios do not represent the facts of this case, the court cannot ignore the actual impact of adopting the State's interpretation in future cases. It would be contrary to the intent of the legislature in enacting the Habitual Offender Law to subject defendants in such circumstances to enhanced habitual offender penalties, particularly when an individual is improperly jailed although innocent. Such an interpretation could lead to constitutional infirmities related to cruel and unusual punishment, and a truly absurd result.

---

[8]  La. R.S. 14:28 concerns the crime of inciting a felony and provides that "[w]hoever commits the crime of inciting a felony shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than two years, or both."  La. R.S. 14:28(B).

[9]  La. R.S. 15:529.1(A)(4)(a) provides: "If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then the following sentences apply: (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life."

Finally, this court also notes the State presented an alternative argument to support its position that the five-year cleansing period had not elapsed at the time Diano committed the instant offense on January 24, 2021. According to the State, although defendant was released from parole on the three predicate offenses on December 25, 2015, he remained on supervised probation relative to the third (January 7, 2013) predicate offense until April 8, 2016, as a result of a split sentence. In support, the State argues defense counsel stipulated to these facts at the hearing on the motion to quash. However, the State's position is not supported by an evaluation of the entire record.

In addressing whether the cleansing period had elapsed, the sole argument raised by the State in its written response to defendant's motion to quash the habitual offender bill of information involved the 180 days Diano spent incarcerated for a misdemeanor offense. However, during the course of the subsequent January 10, 2024 hearing on the motion to quash, the State asserted for the first time that defendant remained on probation for the third predicate offense until April of 2016. The seventy-plus page transcript reflects there was extensive colloquy between the district attorney, defense counsel, and the district judge reviewing the relevant information and dates for all three predicate convictions, as well as general discussion regarding the sentences imposed. The State quotes a short excerpt from the lengthy transcript wherein it contends defense counsel stipulated defendant remained on probation until April 8, 2016. However, after reviewing the transcript in its entirety, this court does not find a formal stipulation that defendant remained under correctional supervision for the third predicate offense until April 8, 2016, for purposes of calculating the cleansing period.

9

In the course of the discussion, the parties worked to delineate and clarify the issues to be decided by the court. Defense counsel expressed agreement with certain representations made by the State regarding the dates of the offenses and convictions and identity of defendant relative to all three predicates, and there was discussion regarding the sentences for the predicate offenses. The transcript reflects that in response to the State's new assertion regarding the probation date, defense counsel expressed concern regarding the complexities of a split sentence, but agreed generally that if defendant started probation on April 8, 2013, the day he was sentenced, three years of probation would end on April 8, 2016. But neither the transcript, nor anything else in the record,[10] supports a finding that the parties or the district court construed the discussion to constitute a formal stipulation that defendant remained on probation until that date.[11] Had such a stipulation been entered, the district court could have denied defendant's motion to quash immediately based on La. R.S. 15:529.1(C)(1), making the issue of the 180-day misdemeanor incarceration irrelevant. Instead, the district court continued the hearing until February 8, 2024. Prior to that date, the court allowed the parties to submit supplemental memoranda on any issue they deemed relevant. Notably, as it relates to the cleansing period, the State's supplemental memorandum only addressed the issue of the misdemeanor incarceration–it did not include an explanation or argument addressing whether defendant remained under correctional supervision for the third predicate offense.

---

[10] Although the State introduced various exhibits at the hearing, the State did not introduce evidence definitively demonstrating when Diano began probation and, more importantly, when he was formally released from probation.

[11] This court finds it noteworthy that the parties did enter into a stipulation regarding the conviction date, sentence, and incarceration time relative to Diano's misdemeanor offense in 2018. The transcript reflects the State and defense counsel expressly agreed to a stipulation on the record, with the court confirming the stipulation on the record. By stark contrast, when discussing the sentence and probation on the third predicate offense, no one uttered the word "stipulation" or otherwise confirmed a formal agreement.

10

At the February 8, 2024 hearing, the district judge framed the relevant issue, and the parties agreed on the record, that the *only* issue was whether the 180 days defendant was incarcerated for a misdemeanor offense should be excluded from calculation of the cleansing period. The district judge then continued to analyze that issue, with the parties engaging in additional oral argument. At no time during this hearing, or during the court's oral ruling on the motion, was the issue regarding whether defendant remained on probation for the third predicate offense addressed. The district court's ruling was based solely on finding Diano's 180-day incarceration on a misdemeanor offense is included when calculating the five-year cleansing period.

The State had the burden of proving the cleansing period had not elapsed. <u>See</u> **State v. Kisack**, 16-0797, p. 6 (La. 10/18/17), 236 So.3d 1201, 1205. Finding no stipulation that Diano remained under correctional supervision until April 8, 2016, and finding no factual evidence supporting the State's assertion in the record, this court holds the State failed to satisfy its burden of proving the cleansing period had not elapsed.[12]

## CONCLUSION

Following well established rules of statutory interpretation, this court concludes that the language in La. R.S. 15:529.1(C)(1)–"any period of ... incarceration ... shall not be included in the computation of" the five-year cleansing period–cannot be read in isolation and must be read in conjunction with the entirety of subsection (C)(1). Reading the text of the statute as a whole, and strictly construing subsection (C)(1) in a manner consistent with the purpose of the Habitual

---

[12] This finding is consistent with the concurrence of now Chief Judge McClendon in the court of appeal, who indicated she would deny the State's writ on the alternative argument based on the showing made.

11

Offender Law, this court holds that the time defendant spent incarcerated for a misdemeanor offense in 2018 and 2019 is included and counted when calculating whether the five-year cleansing period has elapsed. Moreover, based on the record before the court, the State did not otherwise prove the cleansing period had not elapsed. Thus, the district court correctly granted Diano's motion to quash the habitual offender bill.

## DECREE

**THE RULING OF THE DISTRICT COURT IS AFFIRMED.**

# SUPREME COURT OF LOUISIANA

## No. 2024-KK-00888

## STATE OF LOUISIANA

## VS.

## CHRISTOPHER RAYMOND DIANO

On Supervisory Writ to the 32nd Judicial District Court, Parish of Terrebonne

**CRAIN, J.**, dissents with reasons.

The majority unnecessarily decides this case on a statutory interpretation of Louisiana's Habitual Offender Law. In its briefing, the state argued that the cleansing period in La. R.S. 15:529.1(C)(1) did not lapse because the defendant was on supervised probation until April 8, 2016. Applying the five-year cleansing period to this date, any offense committed prior to April 8, 2021 makes the defendant a four-time felony offender. The instant offense was committed on January 24, 2021. Thus, the defendant is a four-time felony offender, and the case should have been decided on these grounds alone.

The majority finds insufficient evidence that the defendant was on probation until April 8, 2016. I disagree. The matter came before the trial court on a motion to strike the habitual offender bill of information. At the hearing, the trial judge questioned both the state and the defense regarding the relevant dates for deciding whether the five-year cleansing period expired. In sum, the trial judge wanted to know when the defendant was arrested, when he was convicted, what was the sentence, how much time did he serve, and when did his probation and parole end. These facts were important because the cleansing period does not run when the

1

defendant is under correctional supervision, which includes parole, probation, or incarceration. La. R.S. 15:529.1(C)(1).

It was agreed the defendant pled guilty on April 7, 2009 to two counts of possession of a controlled dangerous substance. The defendant again pled guilty on May 6, 2010 to possession of a controlled dangerous substance and attempted possession of a firearm by a convicted felon. Lastly, the defendant was convicted on January 7, 2013 of possession of a controlled dangerous substance. For that conviction his imposed sentence was vacated, and he was resentenced on April 8, 2013. As part of that sentence, the record and testimony established that following a period of incarceration at hard labor, the defendant was placed on probation for three years. Thus, all three prior convictions occurred within five years of each other, leaving the only issue whether the cleansing period expired between the 2013 conviction and sentence and the instant case.

The minute entry from the defendant's April 8, 2013 resentencing was admitted by stipulation and confirms that the defendant was resentenced: "To serve two years with the Department of Corrections of the State of Louisiana, suspended upon serving one year, consecutive with time he is spending for parole and placed on supervised probation for three years." The defendant's new sentence expressly included three years of supervised probation.

In addition to stipulating to the admission of the minute entry, the three-year probation period was acknowledged by defense counsel at the hearing on the motion to strike. After establishing that all periods of incarceration ended on December 25, 2015, the trial judge asked, "Was there any supervision after that date?" The state responded, "There was supervision on the probation which he completed on April the 8th, 2016." The trial judge asked defense counsel to respond. Defense counsel said, "Yes, your honor." The trial judge asked a second time whether the defense agreed with the representations made regarding the third conviction. Again, defense

counsel responded, "Yes, your honor." Additionally, defense counsel stated, "He pled on January 7th, 2013, resentenced on April 8th, 2013. If he started probation on that day, three years later would be April 2016." Thus, the hearing transcript establishes that the defendant was under supervision until April 8, 2016. This is consistent with the minute entry. While I believe defense counsel stipulated to this fact, the minute entry alone is unchallenged and sufficient to prove it.

Because defendant's first predicate conviction was in 2009, his second was in 2010, and his third was in 2013, there was no five-year period between the first and the third predicate offenses to cleanse his record. After expiration of his probated sentence on April 8, 2016, the five-year cleansing period began to run. The subject crime was committed on January 24, 2021, within that five-year period. Thus, the defendant is properly a fourth-felony offender. I dissent.